DAVID M. DUDLEY, ESQ. (SBN No. 118629)
3415 South Sepulveda Blvd., Suite 320
Los Angeles, CA  90034
Tel.:  (310) 772-8400
Fax.: (310) 772-8404

Attorney for Defendant Joshua Haynes

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSHUA HAYNES,<br><br>Defendant. | Case No. 3:13-CR-00079-RRB-07 |

# DEFENDANT HAYNES'S SENTENCING MEMORANDUM

COMES NOW Defendant Joshua Haynes, by and through his attorney, to present to the Court his Sentencing Memorandum.  Having pleaded guilty to a conspiracy to distribute cocaine, the defendant now faces sentencing pursuant to that plea on June 25, 2015.

While the defendant agrees with the Presentence Report ("PSR") that his advisory sentencing guideline range should be 37 to 46 months, given a total offense level of 21 and a criminal history category of I, he would submit that a

significant downward variance would be appropriate here, given several mitigating factors that pertain to his life history. Due to those mitigating circumstances, which the defense will address both in this Memorandum and at the sentencing hearing, it believes that the Court ultimately should sentence Mr. Haynes to a term of imprisonment somewhere in the range of 18 to 24 months.

**I.**

**PROCEDURAL BACKGROUND**

Defendant Haynes has pleaded guilty to one count of conspiring to distribute, and possess with intent to distribute, cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). Sentencing is presently scheduled for June 25, 2015 at 1:15 p.m. A final PSR has been disclosed and neither party has presented any objections to the conclusions of that report.

# II.

# THERE ARE MULTIPLE GROUNDS FOR DOWNWARD VARIANCE IN THIS CASE

*A. The Defendant's Childhood Was Plagued by a Lack of Any Proper Familial Guidance.*

As the government notes in its Sentencing Memorandum ("GSR"), this Court "is well aware of the defendant and his family's history, having sentenced several members of the Haynes' family and extended family." GSR 4. Paragraphs 37 through 40 of the PSR set forth in detail the criminal histories of Defendant Haynes's father and older siblings. In his 30 years of practicing in the federal courts of this country, defense counsel has reviewed well over one thousand Presentence Reports and never before has seen any PSR which reflects such an extensive criminal record for multiple members of one defendant's family.

The government asserts that this family history supports a harsher sentence than might otherwise be proper for this defendant: the "defendant should be well aware of the consequences of drug use and drug trafficking, as it resulted in the addiction and lengthy incarceration of several of his own family members. Yet, this did not deter him." GSR 4-5. The defense would assert the opposite: given that Joshua Haynes's father and all of his older siblings were involved in

3

substantial drug-trafficking activities—and that his mother was a crack head living principally in drug dens, PSR 44--throughout his entire childhood and adolescence, there was no possibility whatsoever that he would have experienced any proper adult life guidance.

As Gabrielle Haynes explained to the United States Probation Office ("USPO") in her case, with both parents lost to the drug world—one as a seller, the other as a user--the job of raising her and her brothers, including Joshua, fell upon her older half-brother, Anthony Gadson, who provided for them all by dealing drugs himself, which eventually resulted in his own incarceration. PSR 38, 44. In a recent letter directed to the Court and attached to this Memorandum as Exhibit "A", Ms. Haynes summarized her upbringing and that of Joshua and other younger siblings: "We have had a hard life, we grew up without parents and we didn't have the proper structure that one should have had. We had to learn how to survive by any means, and that's what we did. Yes we made mistakes and yes we should be punished for them. I know that he has to go away for a little bit but I want him to be able to come home soon and help out with his son and my other sibling's kids…"

If both of the defendant's parents, and all of his older siblings, were either drug users or drug dealers, who was going to provide him with the type of proper and meaningful guidance that a young boy needs to direct his life in an appropriate

4

moral and law-abiding direction? The defense cannot name any such person—and the government certainly cannot either.

The indisputable fact that Joshua Haynes did not have—and, under the circumstances, could not have had—any effective familial or other adult guidance as a child and as a teenager is not being offered here as an excuse for his criminal conduct: he has already taken full individual responsibility for his actions. What it is being offered as is an explanation as to how he reached the position he is in now and a factor that differentiates him from the overwhelming majority of defendants convicted of narcotics crimes of a similar magnitude and facing a similar advisory guideline range. Mr. Haynes should undoubtedly receive less severe punishment than other defendants who grew up in a more stable family environment and who had at least some appropriate adult guidance as youths.

*B. The Defendant's Lack of Education and Likely Learning Disability Affected His Ability to Exercise Proper Judgment.*

Without any parents or other adults to push him to obtain a proper education, Defendant Haynes dropped out of school sometime before completing the ninth grade. PSR 54-56. In 2010, Mr. Haynes did take some classes at The Community Learning Institute in Quincy, Florida in an effort to obtain his GED but apparently never received a government-approved GED certificate. PSR 54, 56.

More troubling is the fact that at the commencement of high school, the defendant was referred to, was accepted by, and did attend for a while, a school that had been established to educate children with extremely severe learning disorders such as autism, Dre's Playhouse in Perry, Florida. PSR 54-56. As reflected in the printed web pages for Dre's Playhouse, attached to this Memorandum as Exhibits "G" and "H", this was "a private school dedicated to involving a quality educational & recreational program to students with autism, ADD, ADHD, specific learning disabilities, and behavioral challenges."

Because the defendant himself cannot explain why he was sent to a special school other than to say that, as a child, educators always characterized him as a "slow learner," the defense badly wanted to obtain records from Dre's Playhouse reflecting what particular learning disability led to Haynes's referral to, and acceptance into, that facility. Unfortunately, the Playhouse, which had also expanded to a school in Orlando, Florida, closed about two or three years ago, so the defense was unsuccessful in retrieving the desired documents.

For the defendant to have been placed at Dre's in the first instance, however, a diagnosis of some sort of severe learning disability would have been a necessary condition of that placement. And the presence of such a disability would be entirely consistent with his failure to complete is education beyond the eight grade. It would also be consistent with defense counsel's experiences with Mr. Haynes—

6

that throughout the process of this case he has had to explain to his client certain basic factual and legal points repeatedly on multiple occasions due to the defendant's seeming failure to grasp those points.

Should Defendant Haynes's education have been adversely affected by a serious learning disorder, that disorder would probably have impacted his overall exercise of good judgment as he became older. Regardless of whether the defendant has suffered, or currently continues to suffer, from such a disability, his failure to complete his education beyond middle school clearly would have left him even more vulnerable to making bad life decisions, especially in light of the absence of adult guidance previously discussed. The defendant's lack of advanced education, whether or not it resulted from a specific learning disability, also differentiates him from other similarly situated defendants and provides further justification for a downward variance from the advisory guideline range.

C. *The Defendant's Severe Substance Abuse Affected His Decision-making Capabilities.*

Defendant Haynes started smoking marijuana at the age of 11 and, until his incarceration last year, he had used it daily since then. PSR 52. At age 12, he began using cocaine on a frequent basis and later moved on to regular ingestion of ecstasy, crystal methamphetamine, and heroin. PSR 52.

It is difficult to imagine how such ongoing consumption of multiple illegal drugs, commencing in childhood, would not have had a severe negative impact on the defendant's cognitive development and his better judgment, both as a teenager and later in life. Not necessarily incidental to these apparent drug addictions, Mr. Haynes has reported suffering from depression, anxiety, panic attacks, and compulsive gambling since his early years. PSR 51. The defense would submit that a judgment in this case which emphasized outpatient drug treatment and psychological therapy rather than continued incarceration would better serve the needs of Mr. Haynes and the interests of the community at large. Given the present support of his extended family and friends as reflected in Gabrielle Haynes's letter and five other letters attached to this Memorandum as Exhibits "B" through "F", the defense believes that with such treatment and therapy, the defendant will be able to turn what has thus far been a difficult life in a positive direction.

# III.

# A SENTENCE IN THE RANGE OF 18 TO 24 MONTHS WOULD SERVE THE PURPOSES OF FEDERAL SENTENCING

Due to the absence of any meaningful adult guidance during Defendant Haynes's youth, the consequences of which were exacerbated by an apparent learning disorder and by his evident multiple drug addictions (perhaps carried out as a form of self-medication for an emotionally painful childhood and several underlying and related psychiatric conditions), the defense would contend that a significant downward variance of about six levels, to an advisory guideline range of 18 to 24 months, is warranted in this case. A sentence within that range, especially one that included drug treatment and psychological therapy as a condition of supervised release, would serve the purposes of sentencing as delineated in 18 U.S.C section 3553(a). In particular, such a sentence would more immediately address the defendant's indisputable need for such treatment and therapy, which if successful, would vastly reduce any objective chance of recidivism on his part, thereby serving the goal of protecting societal interests.

## IV.

## CONCLUSION

For all the above reasons, Defendant Haynes hereby requests that this Court impose a sentence of 18 months in this case, or alternatively, at least a sentence no greater than 24 months.

Respectfully submitted,

DATED: June 18, 2015                         /s/ David M. Dudley
                                             DAVID M. DUDLEY, Esq.

                                             Attorney for Defendant
                                             JOSHUA HAYNES

10

Case 3:13-cr-00079-RRB-DMS   Document 714   Filed 06/18/15   Page 10 of 11

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of June 2015, I caused the foregoing to be electronically filed with the Clerk of the Court of the United States District Court for the District of Alaska using the CM/ECF system.

I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the district court CM/ECF system.

    /s/ David M. Dudley
DAVID M. DUDLEY, Esq.

Attorney for Defendant
JOSHUA HAYNES